### Robert METCALF, Plaintiff,

v.

### BLUE CROSS BLUE SHIELD OF MICHIGAN, a Michigan corporation; Daimler Trucks North America, LLC, a Delaware corporation; and Daimler Trucks North America LLC Group Health Plan, Defendants.

Case No. 3:14–cv–00302–ST.

United States District Court,
D. Oregon.

Signed Nov. 5, 2014.

Steven P. Krafchick, Krafchick Law Firm, PLLC, Seattle, WA, for Plaintiff.

Robert B. Miller, Kilmer Voorhees & Laurick, P.C, Portland, OR, for Defendants.

## OPINION AND ORDER

MICHAEL H. SIMON, District Judge.

United States Magistrate Judge Janice M. Stewart issued Findings and Recommendation in this case on August 27, 2014. Dkt. 24 (hereinafter "F & R"). Judge Stewart recommended that Defendants' motion to dismiss for failure to state a claim be denied as to Claims 1 and 2 and granted as to Claim 3, with leave to replead as a separate ERISA violation.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.;* Fed. R.Civ.P. 72(b)(3). For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn,* 474 U.S. 140, 152, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Nor, however, does the Act "preclude further review by the district judge[ ] *sua sponte* ... under a *de novo* or any other standard." *Thomas,* 474 U.S. at 154, 106 S.Ct. 466. Indeed, the Advisory Committee Notes to Fed.R.Civ.P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Defendants timely filed an objection, Dkt. 26, to which Plaintiff Metcalf ("Metcalf") responded. Dkt. 28. Defendants object to the portion of Judge Stewart's F & R recommending that Defendants' motion be denied as to Claims 1 and 2. As no party has objected to the portion of the F & R regarding Claim 3, the Court reviews that portion for clear error on the face of the record. As no such error is apparent, the Court adopts that portion of the F & R. The Court reviews *de novo* the portion of the F & R regarding Claims 1 and 2 and

adopts that portion as supplemented below.

## BACKGROUND

Robert Metcalf is a chiropractor in North Carolina. He regularly treats individual participants enrolled in Defendant Daimler Trucks North America LLC Group Health Plan ("Plan"). Healthcare providers who participate in the Plan are paid directly by the Plan; non-participating providers are typically paid by their patients, who must then file a claim with the Plan for reimbursement. Metcalf does not participate in the Plan. Instead, he makes the following arrangement with his patients: They assign their right to reimbursement directly to Metcalf and authorize him to pursue their claims on their behalf, as well as any other rights they have under the Plan in connection with his services. Both patient and provider benefit from this arrangement: Metcalf's patients get treated without having to pay out of pocket, and Metcalf streamlines his cash flow.

Insurance plans, however, typically incentivize healthcare providers to participate—and thereby subject the providers to cost constraints—with the promise of "quick, certain and direct payment from the insurer." [1] That incentive is reduced if non-participating providers may strike a deal with their patients, as Metcalf has done. The Employee Retirement Income Security Act of 1974 ("ERISA"),[2] the federal law governing employer health insurance plans, is silent as to whether healthcare benefits may be assigned.[3] Accordingly, the consensus among the federal courts is that ERISA neither mandates nor prohibits the assignability of healthcare benefits; Congress intended that issue to be open to bargaining between insurer and insured. *See* F & R at 1293–94 (collecting cases).

The Plan at issue in this case does not contain an anti-assignment clause. The assignments to Metcalf were, therefore, valid.[4] But Metcalf alleges that although he regularly pursued claims on behalf of his patients insured by the Plan, Defendants have refused to pay him. Accordingly, he asserts four claims for relief, two of which are at issue here: first, his claim under 29 U.S.C. § 1132(a)(1)(B), for denying claims for benefits; and second, his claim under § 1132(a)(3), for failing to conduct a full and fair review of his claims.

## DISCUSSION

Defendants argue that Metcalf failed to state a claim for relief because he is not a statutory "beneficiary," has standing only derivative of his assignors, and has no right upon which to sue. The arguments in Defendants' Objection all depend on one basic factual premise: that Defendants have already paid all benefits owed—not to Metcalf, but to the participants, his patients.[5] Defendants argue that they have

---

1. *See generally Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. N.Y., Inc.,* 1997 WL 204309, at *3–4 (N.D.N.Y. Apr. 10, 1997).

2. 29 U.S.C. §§ 1001–1461.

3. In "striking contrast" to this silence, ERISA does contain a "complex and extensive provision prohibiting assignment of *pension* benefits." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust,* 789 F.2d 1374, 1376 (9th Cir. 1986) (emphasis added).

4. Defendants seem to agree: In their Objection to the F & R, they concede that they "[do] not challenge the validity of the assignments here." Dkt. 26 at 11.

5. At earlier stages in the litigation, Defendants appear to have additionally argued both that the assignments at issue were invalid and that Metcalf lacked standing to sue. Those arguments did not depend on this premise— but Defendants have failed to renew those arguments in their Objection. Indeed, they

thereby discharged their obligations under ERISA and the Plan.

The Court's analysis proceeds as follows. First, regardless of the merits of Defendants' argument, several parts of Metcalf's claims survive. Next, as a matter of statutory interpretation, the assignee of a participant is a "beneficiary" under ERISA with an independent cause of action. Finally, under federal common law, an ERISA obligation may not be discharged, in the presence of a valid assignment, by paying the participant—assignor rather than the assignee.

## A. The Benefits at Issue

Defendants' basic factual premise—that they have already paid the benefits owed—is contested: Metcalf alleges that some of the several hundred claims for benefits at issue were not paid to *anyone.* Dkt. 1 at 8. At this stage of the litigation, the Court must accept that well-pleaded material allegation as true. *See Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir.2012). Furthermore, in addition to payment of past benefits, Metcalf seeks injunctive relief for any future benefits his patients may assign him, Dkt. 1 at 18, as well as retrospective and prospective relief regarding his entitlement to Explanations of Benefits and other procedural rights. Dkt. 1 at 15–16, 18. Whether Defendants paid some past benefits directly to participants does not affect this portion of Metcalf's claims. Therefore, with respect to his requests for injunctive relief for future benefits, relief regarding procedural rights, and unpaid benefits, Metcalf's claims survive: The only portion of Metcalf's claims for relief still in question is that concerning past benefits that Defendants have already paid.

have conceded that the assignments are valid, *see supra* n. 4, and that Metcalf, at a minimum, has derivative standing as an assignee,

## B. Beneficiaries under ERISA

The ERISA provisions under which Metcalf brings his claims, 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3), allow suit to be brought by a "beneficiary." Defendants argue that Metcalf is not a "beneficiary" as defined by the statute. The litigation thus far has addressed this issue as a matter of standing. In fact, however, it is a question on the merits. After the Supreme Court's recent decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* — U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), the question is properly addressed as whether ERISA provides Metcalf with a cause of action.

### 1. Statutory Standing

Defendants argue that Metcalf lacks statutory standing under ERISA because he is not a statutory "beneficiary." If Metcalf lacks standing under ERISA, Defendants assert, he has standing only as an assignee, derivative of his assignors' standing. Because his assignors have been paid, they have no injury, and therefore no standing—and thus Metcalf has no standing, Defendants maintain. If Defendants are correct that Metcalf lacks standing to bring a claim, then any inquiry into the merits of an assignee's rights under ERISA is foreclosed.

In *Lexmark,* the Supreme Court clarified its jurisprudence on the requirement of statutory "standing"—by eliminating it. Although the court below had analyzed the issue and the parties had presented the question in terms of the plaintiff's "standing to sue under the Lanham Act," 134 S.Ct. at 1385, the Supreme Court recast the issue as a question on the merits:

*see* Dkt. 26 at 6 ("[Metcalf's] standing is derivative. . . . ").

whether the plaintiff had a statutory cause of action. *See id.* at 1387 ("In sum, the question this case presents is ... whether Static Control has a cause of action under the statute.") The Court expressly abjured both the "standing" label and the jurisdictional nature of the inquiry. *Id.* n. 4.[6]

After *Lexmark*, the jurisdictional standing analysis under these circumstances is simply the familiar constitutional standing inquiry: whether Metcalf has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *See id.* at 1386 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). That requirement is surely satisfied here. The remaining inquiry is simply "whether a legislatively conferred cause of action encompasses [Metcalf's] claim."[7] *See id.* at 1387.

## 2. Cause of Action

■ Whether Congress has provided Metcalf with a cause of action boils down to the original question—whether the term "beneficiary" in §§ 1132(a)(1)(B) & (a)(3) encompasses assignees—albeit now as a question on the merits, to be answered using "traditional tools of statutory interpretation." *See Lexmark*, 134 S.Ct. at

1387. The plain text of the statute defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). To Judge Stewart, this definition was "sufficiently broad to include a person such as Metcalf who has been designated by participants ... to receive benefits and pursue claims." F & R at 1295. As a matter of plain text, this Court agrees.

Defendants, however, object that such an interpretation is precluded by *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir.1986). Plaintiffs respond that Judge Stewart's interpretation is *required by Misic*. But *Misic* neither precludes nor requires such an interpretation. *Misic* analyzed the issue under the rubric of standing; the court did not reach the statutory interpretation of "beneficiaries" because the doctor—assignee had, in his complaint, alleged that he was "stand[ing] in the shoes of the [b]eneficiaries." *Id.* at 1378 (quoting the complaint) (second alteration in original). That is, he had alleged that his standing was derivative. *Misic* held only that that allegation adequately established standing. The court expressed no opinion on whether Dr. Misic could have alleged standing in his own right, nor on whether an assignee could be a "beneficiary" under ERISA.[8]

---

6. For an excellent scholarly summary of *Lexmark*, see Richard M. Re, *The Doctrine Formerly Known as "Statutory Standing"*, Re's Judicata (Aug. 27, 2014, 2:30 PM), http://richardresjudicata.wordpress.com/2014/08/27/the-doctrine-formerly-known-as-statutory-standing/.

7. The Ninth Circuit has not decided an ERISA statutory standing case since *Lexmark*, but this analysis accords with that in *Nat'l Health Plan Corp. v. Teamsters Local 469*, 585

Fed.Appx. 832, 835, 2014 WL 4589917, at *2 (3d Cir. Sept. 16, 2014).

8. Indeed, the *Misic* court specifically noted that "in at least one case, assignees of persons statutorily permitted to sue under ERISA [had] themselves been permitted to sue under ERISA," 789 F.2d at 1378 n. 4 (citing *Nw. Adm'rs, Inc. v. Con Iverson Trucking, Inc.*, 749 F.2d 1338, 1339 (9th Cir.1984)), leaving open the possibility that Dr. Misic could have brought suit in his own right.

In most cases, *Misic* has provided sufficient authority for assignees to bring suit. Accordingly, the Ninth Circuit has not had occasion to address squarely whether the statutory definition of "beneficiary" encompasses assignees. By making payments directly to individual participants, Defendants have sidestepped the reasoning of *Misic*, which raises the question anew. But the Sixth Circuit, addressing this specific question, concluded that "[a] health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir.1991). This authority is persuasive and comports with the plain text of the statutory definition.

 In addition to analyzing the plain text and precedent, *Lexmark* directs that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" 134 S.Ct. at 1388 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The breadth of the zone-of-interests test "varies according to the provisions of law at issue." *Id.* at 1389 (quoting *Bennett v. Spear*, 520 U.S. 154, 164, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). To determine which interests Congress intended to protect, *Lexmark* looked to the Lanham Act's statement of policy.

ERISA's statement of policy provides that the purpose of the law is "to protect ... the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). In addition, Congress intended that assignability be a freely bargainable term in a healthcare plan. *Davidowitz v. Delta Dental Plan of Cal.*, 946 F.2d 1476, 1480–81 (1991). Taken together, these two propositions support the conclusion that where participants in a plan have bargained for the right to assign benefits, permitting an assignee to sue under ERISA protects not only the assignee, but the participant as well. Therefore, the interests of the assignee of a participant are well within the zone of interests protected by ERISA.[9]

In sum, the plain text of the statute encompasses assignees, who have been "designated by a participant" to become "entitled to a benefit" under a healthcare plan. *See* 29 U.S.C. § 1002(8). This interpretation is supported by persuasive authority. *See Cromwell*, 944 F.2d at 1277. And the interests of an assignee fall within the zone of interests protected by ERISA. Therefore, the assignee of a participant has a cause of action as a "beneficiary" under §§ 1132(a)(1)(B) & (a)(3).

## C. ERISA Assignments as a Matter of Federal Common Law

 Given its silence regarding whether healthcare benefits can be assigned, it is unsurprising that ERISA is also silent regarding the rights and obli-

---

9. This approach comports with related precedent. In *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court held that a state tax board attempting to levy participants' benefits did not have a cause of action under ERISA. *Id.* at 27, 103 S.Ct. 2841. The Court did not engage in a zone-of-interests analysis, but the state tax board's interests were adverse to those of the participants. And in *Simon v.*

*Value Behavioral Health, Inc.*, 208 F.3d 1073 (9th Cir.2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir.2007), the Ninth Circuit held that the assignee of an assignee did not have standing, both because he was not included in the plain text of the statute and because "transforming health benefit claims into a freely tradable commodity" would do nothing to further ERISA's purpose of protecting participants and beneficiaries.

gations relating to such assignments. Of particular relevance here, ERISA says nothing about whether an ERISA obligation can be discharged, despite a valid assignment, by paying the assignor rather than the assignee. In the absence of statutory guidance, the federal courts "are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

 In that endeavor, the federal courts are to be guided by two sources: "the policies expressed in ERISA and other federal labor laws," and state law, from which they may borrow where appropriate. *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1125 (9th Cir.2002) (quotation marks omitted). But under ERISA federal common law, "borrowed" state law neither applies of its own force nor is incorporated as the rule of decision. *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1439 (9th Cir. 1990); *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 539 (9th Cir.1990). Instead, state law is merely a source of *guidance,* alongside the policies of ERISA, in the development of "a uniform federal common law." *Evans,* 916 F.2d at 1440.

Here, referring to Oregon and North Carolina law, Judge Stewart concluded that

> the state law governing assignments permits Metcalf, as the assignee, ... to pursue claims to recover unpaid (denied) benefits and for benefits paid to the assignors (and not paid by the assignors to Metcalf) which failed to discharge the Plan's obligation after the Plan was allegedly notified of the Assignments.

F & R at 1298. This appears to conform to the general rule: according to the *Restatement (Second) of Contracts,* after an obligor receives notice of an assignment, the obligor may discharge the obligation only by paying the assignee. § 338. Defendants object that this reference to state law impairs the uniformity of decisions under ERISA. But this is not so. The F & R "did not simply 'adopt' state law, but looked to state law in order to advance the development of federal common law." F & R at 1296 n. 2. Accordingly, even if a State were to adopt a different rule for assignments of general contract obligations, the rule for ERISA obligations would remain the same.

Defendants also urge that, in the ERISA context, adopting the general rule for discharging an assigned obligation would result in doctrinal inconsistency. The Oregon common-law rule is that an assignor may not collect on an obligation that she has assigned to another. *In re Martin,* 167 B.R. 609, 616 (Bankr.D.Or. 1994) (citing *Commercial National Bank v. Portland,* 37 Or. 33, 38–39, 60 P. 563 (1900)). In contrast, Defendants argue, the ERISA rule is that either an assignor or an assignee may collect. *Hansen v. Aetna Health & Life Ins. Co.,* 1999 WL 1074078, at *6 (D.Or. Nov. 4, 1999).[10]

Defendants' reliance on *Hansen* is misplaced. In *Hansen,* the defendant insurance company refused to pay the assignee, and the plaintiff-participant had to pay out of her own pocket, in effect repudiating the assignment. *See id.* at *6. Under those facts, denying the plaintiff the right to sue comported neither with the policies under-

---

10. Defendants also cite *Cagle v. Bruner,* 112 F.3d 1510 (11th Cir.1997), for the proposition that both a participant and her assignee have standing to sue to collect. But *Cagle* stands only for the proposition that a participant may assign her right to benefits and retain the right to sue to enforce "distinct interests." *Id.* at 1515.

lying ERISA nor with common sense. It is doubtful that the same rule would apply absent similar facts. *See* F & R at 1298 (observing that "an assignment, in some cases, may deprive the assignor of her right to sue"). The Oregon rule notwithstanding, the common law generally has evolved rules to permit assignees to collect on more fragile assignments without subjecting obligors to double liability. *See generally Rest. (2d) of Contracts* § 331 (discussing "[p]artially [e]ffective" assignments). Doubtless, the federal common law under ERISA will do the same.

In addition to state law, the policies underlying ERISA also weigh against permitting insurance companies to pay an assignor and deprive the assignee of the right to collect. The right to assign claims, where not bargained away, benefits participants by enabling them to receive treatment without having to establish their solvency or pay potentially large medical bills up front. *Misic,* 789 F.2d at 1377. To providers, the primary incentive to accept assignments in lieu of payment is a streamlined and simplified billing structure. If the insurance company could undo that incentive at its option, providers would have no reason to accept assignments or pursue uncertain claims on their clients' behalf; the assignment-based business model would cease to exist. An insurance company that would rather have providers streamline their billings only by participating in the plan already has an appropriate mechanism available under the law: bargain for an anti-assignment clause. Where it has not, and it is notified of a valid assignment, it must honor the assignment and pay the assignee.

## CONCLUSION

The Court ADOPTS Judge Stewart's Findings and Recommendations (Dkt. 24), as supplemented herein. For the reasons set forth in Judge Stewart's Findings and Recommendation, as supplemented above, Defendants' motion to dismiss for failure to state a claim (Dkt. 11) is GRANTED as to Claim 3 and otherwise DENIED. Plaintiff's Claim 3 is DISMISSED with leave to replead as a separate ERISA violation.

**IT IS SO ORDERED.**

## FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

### *INTRODUCTION*

This is the second case filed by plaintiff, Robert Metcalf, a chiropractor, alleging claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, to recover benefits for medical services that he provided to individual participants in the defendant Daimler Trucks North America LLC Group Health Plan ("Plan"). In the prior and still pending case, *Metcalf v. Blue Cross Blue Shield of Mich.,* Case No. 3:11–cv–1305–ST *("Metcalf I "),* Metcalf, as an assignee, seeks to recover benefits due to 123 participants for services performed over a 21–month period between May 15, 2008, and February 18, 2010. As discussed in the Opinion and Order dated August 5, 2013 (docket # 82) in that case, the parties strenuously disagree as to whether Metcalf is entitled to recover benefits which defendants have already paid to the Plan's participants after receiving notice of assignments by the participants to Metcalf. Acknowledging the novelty of this issue, this court granted summary judgment in favor of Metcalf as to liability. Hoping to quickly reverse this court's decision on appeal, defendants filed a Motion for Certification for Interlocutory Appeal which this court denied (docket # 94). Discovery is proceeding in *Metcalf I* as to the amount of benefits due.

Convinced that this court reached the wrong decision in *Metcalf I*, defendants continue to disregard the assignments from the participants to Metcalf and pay benefits to the participants, rather than directly to Metcalf. Based on defendants' opposition, this court denied plaintiff's Motion for Leave to File Amended Complaint (docket # 99) in *Metcalf I* to include additional current and future claims. Although this court encouraged the parties to enter into an agreement to toll the statute of limitations, they were unable to do so. To avoid a statute of limitations problem with respect to those accruing claims, Metcalf filed this second lawsuit. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

Defendants have filed a Motion to Dismiss (docket # 11) for failure to state a claim.[1] For the following reasons, that motion should be granted as to Claim 3 and otherwise denied.

### STANDARDS

In evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party. *Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*, 648 F.3d 986, 991 (9th Cir.2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1797, 182 L.Ed.2d 618 (2012). "A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011) (citation omitted), *cert. denied*, —— U.S. ——, 133 S.Ct. 106, 184 L.Ed.2d 23

(2012). Although detailed factual allegations are not necessary,

a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions and formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted and alteration in original).

Generally, FRCP 12(b)(6) does not permit a court to consider evidence beyond the pleadings. If matters outside the pleadings are presented to and not excluded by the court, then a motion under FRCP 12(b)(6) must be treated as one for summary judgment. FRCP 12(d). However, where the complaint refers to a document central to the claim and the authenticity of which is not challenged, then the document is considered part of the pleading for purposes of FRCP 12(b)(6) and (d). *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006) (citations omitted). Even if the complaint does not specifically refer to the document offered with the FRCP 12(b)(6) motion, documents are not outside the complaint if the "complaint necessarily relies" on them or alleges the contents. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.2010) (citing cases extending the incorporation by reference doctrine).

In support of its motion, defendants have submitted the Declaration of Larry Abbiatti (docket # 13) that includes the Plan's Handbook ("Handbook") (Ex. A)

---

1. Not surprisingly, in contrast to *Metcalf I*, this case lacks consent by all parties to a

Magistrate Judge.

and Summary Plan Description ("SPD") (Ex. B). Given that the parties do not dispute the authenticity of these documents and the applicability of their terms to the issues raised by the Complaint, the court will consider them in resolving this motion.

The court will also consider matters of public record filed in *Metcalf I* because they are subject to judicial notice.

### ALLEGATIONS

The allegations in the Complaint in this case are very similar to the allegations in *Metcalf I*, with some additions and clarifications.

The Plan is a health benefits plan subject to ERISA. Complaint, ¶ 1.4. Defendant Daimler Trucks North America LLC ("DTNA"), the employer, is the Plan Sponsor and Plan Administrator and makes all payments for benefits owed under the Plan. *Id*, ¶¶ 1.6–1.9, 2.2, 2.4. Defendant Blue Cross Blue Shield of Michigan ("BCBSM") is the Claims Administrator and issues decisions on claims for benefits submitted to the Plan. *Id*, ¶¶ 1.10–1.12, 2.2–2.3.

Metcalf, a chiropractor who has been practicing in North Carolina for 12 years, regularly treats Plan participants. *Id*, ¶¶ 2.20–2.21. On May 1, 2008, Metcalf switched from being a network provider for the Plan to being a non-participating provider. *Id*, ¶ 2.22.

For each patient who participated in the Plan, Metcalf obtained two forms: (1) an Insurance Assignment and Release ("Assignment"); and (2) a Designation of Authorized Representative ("Designation"). *Id*, ¶ 2.23. "Under the Assignment, each patient assigned directly to [Metcalf] all insurance benefits otherwise payable to the patient for services rendered by [Metcalf], and permitted [Met-

calf] to use the patient's health care information to [*sic*] BCBSM for purposes of obtaining payment for services and determining insurance benefits payment for related services." *Id*, ¶ 2.24. "Under the Designation, each patient designated [Metcalf], to the full extent permissible under ERISA, to otherwise act on the patient's behalf to pursue claims and exercise all rights connected with the [Plan], with respect to any medical or other health care expenses incurred as a result of the services the patient received from [Metcalf]." *Id*, ¶ 2.25.

Periodically, Metcalf submitted Claim Forms to BCBSM for services rendered to Plan participants who had executed these Assignments and Designations. *Id*, ¶¶ 2.26, 2.29. Metcalf put BCBSM on notice that he possessed an Assignment and Designation for each patient with every Claim Form he submitted on behalf of that patient by noting "SIGNATURE ON FILE" in Boxes 13 and 12, respectively. *Id*, ¶¶ 2.27–2.30. Metcalf also put BCBSM and DTNA on notice in December 2008 that he possessed Assignments for all of his patients who participated in the Plan through a letter. *Id*, ¶ 2.34. Metcalf also put BCBSM on notice that he was participating in the Plan on a per-claim basis with each and every Claim Form he submitted by noting "YES" to the question "ACCEPT ASSIGNMENT?" in Box 27. *Id*, ¶¶ 2.31–2.33.

After November 1, 2008, defendants failed to pay Metcalf directly for the claims that he had submitted for services rendered to Plan participants, despite the fact that he possessed Assignments and Designations for these participants and had notified defendants of that fact. *Id*, ¶ 2.35. Instead, defendants either paid his patients or entirely failed to pay *either* Metcalf or his patients. *Id*, ¶ 2.36. Some patients have paid Metcalf with some of

the money paid by defendants, but this represents only a small fraction of what defendants owe Metcalf. *Id*, ¶ 2.39. Concurrently, defendants failed to provide Metcalf with any documentation or notice of their benefits decisions ("Explanations of Benefits" or "EOB"), despite his status as his patients' assignee-beneficiary, claimant, and per-claim participating provider. *Id*, ¶ 2.40.

As the assignee for various Plan participants, Metcalf pursued multiple administrative appeals, seeking both payment for services he rendered, as well as EOBs for the claims for those services. *Id*, ¶¶ 2.46–2.66. BCBSM rejected Metcalf's appeals, claiming that the Plan prohibits the assignment of any rights, and refused to treat Metcalf as either an assignee or a provider participating on a per-claim basis. *Id*, ¶¶ 2.49, 2.60, 2.66. However, the Plan contains no such anti-assignment provision. *Id*, ¶¶ 2.51, 2.61. Because any further efforts to pursue those appeals, as well as similar appeals, were futile, Metcalf is permitted to file this lawsuit without having pursued an administrative appeal of the claims at issue. *Id*, ¶ 2.68.

The claims at issue are those submitted by Metcalf and not paid directly to him by defendants for: (1) 123 patients in *Metcalf I who* are not the subject of cross-Motions for Summary Judgment in *Metcalf I*, including any ongoing claims (Appendix A); and (2) 137 additional patients, including any ongoing claims (Appendix B). *Id*, ¶¶ 2.69–2.70.

As a result, Metcalf alleges two claims against defendants for violating ERISA: (1) violation of § 502(a)(1)(B) by denying claims for benefits (Claim 1); and (2) violation of § 502(a)(3) by failing to comply with a requirement to conduct a full and fair review of the alleged benefit claims (Claim 2). To the extent that his first two claims are not governed by ERISA, he alleges the alternative claims of breach of contract (Claim 3) and tortious interference with business relations (Claim 4). At the hearing on the motion, Metcalf withdrew Claim 4 (docket # 22).

## FINDINGS

### I. Lack of Standing (Claims 1 and 2)

Defendants first argue that Metcalf has no standing as an assignee to pursue ERISA claims to recover benefits which the Plan has already paid to his patients. This is the crux of the parties' dispute in *Metcalf I*. In essence, defendants are asking this court to reconsider its ruling adverse to them in *Metcalf I*. Although the arguments are much better presented here than in *Metcalf I*, this court is unmoved.

■ ERISA allows civil actions to be brought "by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In addition, "a participant, beneficiary, or fiduciary" may bring a civil action "(A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). Such actions may also be brought by health care providers to whom a plan participant has assigned his or her rights. *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377–78 (9th Cir.1986). However, an assignee's standing is limited to the scope of the assignment, and the assignee's claims are limited to those that the Plan participants could bring themselves. *Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 Fed.Appx. 696, 697 (9th Cir.2011) (dis-

missing plaintiff's claims for penalties as beyond scope of assignment language).

By way of background, ERISA is silent with respect to assignment of health care benefits. In light of this silence, those courts addressing the issue have held that Congress did not intend to preclude assignments of health care benefits, rights or causes of action. *See, e.g., Davidowitz v. Delta Dental Plan of Cal., Inc.,* 946 F.2d 1476, 1478 (9th Cir.1991); *Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan,* 25 F.3d 616, 619 (8th Cir.1994), *abrogated on other grounds by Martin v. Ark. Blue Cross & Blue Shield,* 299 F.3d 966 (8th Cir.2002); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield, Inc.,* 49 F.3d 1460, 1464 (10th Cir.1995). The issue of assignability is left to the discretion of the contracting parties. *See, e.g., Davidowitz,* 946 F.2d at 1481 (emphasis in original) (holding that "Congress intended *not* to mandate assignability, but intended instead to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve"); *St. Francis Reg'l Med. Ctr.,* 49 F.3d at 1464. Accordingly, plans may contain anti-assignment clauses in order to constrain the costs of health care. As explained by one court:

> Under a typical arrangement, the insurer makes direct payment to health care providers that participate in the insurer's health plan, but direct payment to non-participating providers is at the discretion of the insurer. The benefit of this system is that the insurer is able to impose cost constraints on the participating health care providers, in return for which the provider receives quick, certain and direct payment from the insurer. This system also provides an incentive to non-participating providers to join the plan. However, "[i]f a pa-

tient could obtain care from a non-participating hospital and assign it the patient's right to be reimbursed under a group policy, in the teeth of an anti-assignment clause, this direct payment inducement . . . would be weakened or eliminated."

*Renfrew Ctr. v. Blue Cross & Blue Shield, Inc.,* No. 94–CV–1527 (RSP/GJD), 1997 WL 204309, at *3–4 (N.D.N.Y. April 10, 1997), citing and quoting *Washington Hosp. Ctr. Corp. v. Group Hospitalization & Med. Servs., Inc.,* 758 F.Supp. 750, 753–54 (D.D.C.1991).

The Plan at issue here does not contain an anti-assignment clause. As a result of that omission, Metcalf contends that the Plan must honor the Assignments and Designations from his patients as required by state law. Defendants, on the other hand, seek to avoid paying benefits or providing EOBs and other information to Metcalf, a non-participating provider. Although Metcalf may have had agreements with his patients, defendants contend that those agreements do not obligate the Plan to pay benefits to Metcalf or provide him with information concerning claims decision. To that end, defendants make several related arguments as to why Metcalf lacks standing as an assignee or designee to pursue the alleged violations of ERISA under either 29 U.S.C. § 1132(a)(1)(B) (Claim 1) or § 1132(a)(3) (Claim 2).

First, they argue that he is not a statutory beneficiary as that term is defined in ERISA, but is only an assignee whose status is limited by the scope of the alleged assignments from the Plan participants. A "participant" or "beneficiary" may sue to recover benefits due under an ERISA-qualified plan, and a "participant," "beneficiary" or "fiduciary" may bring actions for violations of an ERISA provision. 29 U.S.C. § 1132(a)(1)(B), (a)(3). ERISA defines a "beneficiary" as "a person designat-

ed by a participant ... who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). That definition is sufficiently broad to include a person such as Metcalf who has been designated by participants pursuant to the alleged Assignments and Designations to receive benefits and pursue claims. In any event, Metcalf claims well-established derivative standing based on his status as an assignee and designee, such that this is a distinction without a difference.

 Second, defendants argue that Metcalf cannot establish his claims through the alleged Assignments and Designations that the Plan did not receive. Metcalf alleges that he notified the Plan that he had Assignments and Designations from his patients, but not that he communicated the terms of those Assignments and Designations to the Plan. However, as previously held in *Metcalf I,* a debtor must honor an assignment upon receiving notice of the assignment. To be bound by the Assignments, the Plan did not need to receive copies of the actual assignments, but only notice that they existed, and the information provided in the claim forms and letters to the Plan satisfied the notice requirement. Therefore, it is irrelevant whether Metcalf sent copies of the Assignments and Designations to the Plan. It must also be noted that defendants did receive copies of at least some of the Assignments and Designations both from Metcalf directly in 2008 and 2009 and from his counsel during litigation of *Metcalf I.*

Defendants correctly note that Metcalf had only treated two of the patients listed in Appendix B at the time he gave the December 2008 notice. However, the allegations in the Complaint are sufficiently broad to include notice to the Plan of assignments for all patients based on the boxes marked on the Claim Forms.

Third, defendants argue that the Claim Forms alone are insufficient to support Metcalf's claims. By noting "SIGNATURE ON FILE" in boxes 12 and 13 on the Claim Forms, each patient agreed to "authorize the release of any medical or other information necessary to process this claim" and "authorize payment of medical benefits to the undersigned physician or supplier for services described below." Complaint, ¶¶ 2.27–2.30. Defendants interpret that authorization merely as a permissive grant, not a mandate, to the Plan to exercise its discretion to pay Metcalf, a non-participating provider. This argument mischaracterizes Metcalf's claim. Metcalf does not allege that the Claim Forms contain the Assignments and Designations, but only that they provided notice of their existence. Moreover, Metcalf also alleges that in December 2008 he "notified both BCBSM and DTNA in writing that he possessed Assignments on file for all of his patients who participated in the [Plan]." *Id,* ¶ 2.34.

Fourth, defendants contend that Metcalf has not established any duty owed by the Plan to pay him benefits directly or provide him with information either under the Plan terms, the Assignments, or the Designations. They point out that the Plan states that network providers and participating providers are paid directly, but contains no similar requirement to pay non-participating providers, such as Metcalf. Instead it instructs participants that they "are usually required to pay [non-participating] providers directly" and then to "submit the claim to BCBS for reimbursement" which "may be less than the amount [the] provider charged." Abbiatti Decl., Ex. A., p. 20. Without a contract with the Plan as a network or participating provider, defendants contest any obligation to deal with him directly. However, based on its plain language, the Plan does not bar direct payments to non-participating pro-

viders if so directed by the participants through their Assignments. Also, Metcalf alleges that he became a "per-claim" participating provider by virtue of checking Box 27 on the Claim Forms. Complaint, ¶¶ 2.31–2.33. Although the Booklet discusses "participating on a 'per[-]claim' basis" in the section describing non-participating providers, it does not define a per-claim participant as a non-participating provider, leaving open the proper interpretation of the Plan. Abbiatti Decl., Ex. A, p. 20. As discussed below, this language does not create any contract between Metcalf and the Plan, and defendants may well prevail as to their interpretation of the language. However, resolution of this issue must await a determination on the merits. In any event, Metcalf's claims are based not only on the terms of the Plan, but also on the law governing ERISA plans.

▓▓▓ Fifth, Defendants contend that the Assignments do not contain a clear intent to transfer rights from the participants to Metcalf. However, at this stage, the court must accept as true Metcalf's allegations as to the scope of the Assignments which assigned to him "all insurance benefits, if any, otherwise payable to the patient for services rendered by [him]" and the scope of the Designations which designated him to "act on the patient's behalf to pursue claims and exercise all rights connected with the Group Health Plan." Complaint, ¶ 2.24. This alleged scope is sufficiently broad to evidence a clear intent by the patients to transfer all of their benefits, claims, and rights under the Plan to Metcalf.

At the hearing on the motion, defendants refined their argument further. Even if the Plan mistakenly paid benefits to the participants, instead of paying them to Metcalf as required by the Assignments,

defendants contend that ERISA provides no remedy to Metcalf. In the absence of statutory guidance, courts should develop federal common law regarding ERISA rights. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (Congress "expect[ed] that a federal common law of rights and obligations under ERISA-regulated plans would develop"). "In developing a federal common law to govern ERISA suits, federal courts may borrow from state law where appropriate, and be guided by the policies expressed in ERISA and other federal labor laws." *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir.1995) (citation and internal quotations omitted). Because the assignment of a contractual right is generally governed by state law, in *Metcalf I* this court turned to state law (North Carolina and Oregon) regarding assignments as guidance to determine what claims Metcalf can bring under ERISA as an assignee.[2]

Defendants urge this court to reject state law regarding assignments and conclude that ERISA only permits participants to assign their unpaid benefits, not paid benefits, to providers such as Metcalf. In support, they cite *Eden Surgical Ctr.*, 420 Fed.Appx. 696, holding that a health care provider, as the assignee of the plan participants, lacked derivative standing to sue to collect statutory penalties from plan administrators. In his dissent, Judge Bybee noted that under California law, the assignee held "the exclusive rights to sue on the assigned claims." *Id.* at 697 (citation omitted). He chastised the majority for "essentially ignor[ing] both the broad and express assignment language" and holding that language in one section deprived the assignee of standing. *Id.* at

**2.** Contrary to defendants' characterization, this court did not simply "adopt" state law,

but looked to state law in order to advance the development of federal common law.

698. By rejecting Judge Bybee's dissent, defendants argue that the majority of the court rejected the application of state law governing assignments. However, the majority did not discuss the role of state law, but merely relied on specific language of the assignment to exclude the alleged claim. Nothing in that decision assists defendants.

Defendants also cite *Hansen v. Aetna Health & Life Ins. Co.*, No. Civ. 98–949–HA, 1999 WL 1074078 (D.Or. Nov. 4, 1999). In that case, a plan participant sued to recover unpaid medical benefits for care provided to her deceased spouse. The plan sought summary judgment asserting, among other arguments, that the plaintiff was no longer the real party in interest because she had assigned payment of medical benefits to a medical treatment facility. Citing *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir.1997), Judge Haggerty rejected "defendants' theory that only one entity can assert the rights that plaintiff seeks to exercise, and that plaintiff has given up that right through her assignment." *Id.* at *6. Noting the lack of authority presented by defendants to support their theory, Judge Haggerty explained that:

> [s]uch a construction would contradict a primary objective of ERISA—enhancing employees' health and welfare benefit coverage. Holding that the creation of an assignee's right to sue derivatively would also deprive a participant or beneficiary of a plan the right to sue, accordingly, would thwart this congressional intent. If a participant's or beneficiary's status of assignor of benefits deprived them of standing, such assignments would be discouraged, and the risks of financial disruption and non-payment would be increased. Under defendants'

theory, participants such as plaintiff, who paid the assignees for the care rendered after Aetna refused to do so, would suffer the hardship of lacking standing to enforce rights, and the assignees, who have been paid, would have no interest in incurring the cost of a derivative suit on the participants' behalf.

*Id.* (citation omitted).

If both the assignor and assignee have standing to sue, as held by *Hansen* and *Cagle*, defendants reason that the assignment does not transfer all rights to the assignor, thus invalidating the assignment. But that reasoning is defective. Neither *Hansen* nor *Cagle* deal with the situation presented here. In *Hansen*, the assignor had paid the assignee for services rendered after the plan had denied coverage, eliminating the assignee's incentive to sue to recover benefits. In contrast here, Metcalf alleges that he has not been paid for services rendered to the assignors, except for "some of the money Defendants paid" to them "which is only a small fraction of what Defendants owe." Complaint, ¶ 2.39.[3] Since he has allegedly agreed to accept payment under the terms of the Plan as full reimbursement, he, and not his assignors, has every incentive to sue to recover benefits.

*Cagle*, cited by *Hansen*, also is distinguishable. The father signed a form assigning to the hospital his son's right to payment of medical benefits. Later, the insurer refused to process any additional claims for the son unless the mother signed a standard subrogation form which she refused to do. When the insurer filed suit for declaratory and injunctive relief, both the mother and the hospital counterclaimed against the insurer for refusing to

---

**3.** Of course, to the extent that Metcalf has received payment from his patients/assignors

for his services, he has no claim against defendants for that amount.

pay benefits. The insurer argued that if the hospital had standing as an assignee to sue, then the mother did not. Allowing the mother to challenge the subrogation agreement, *Cagle* did not find that the assignor's and assignee's "standing to be mutually exclusive, because [they] have distinct interests in this litigation." *Cagle,* 112 F.3d at 1515. The hospital was concerned with being paid for its treatment of the son, while the mother's concern was the scope of the subrogation agreement which "is of little or no concern to [the hospital], which has no claim against any damages that may be recovered from a third party." *Id.* at 1516. In contrast here, Metcalf, as the assignee, is pursuing his assignors' benefits, claims, and rights.

Furthermore, an assignment, in some cases, may deprive the assignor of her right to sue. *See Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1283 (9th Cir.1983) (noting that "had the assignors sought to save their claims for later use," they would not have employed language effectuating a full assignment of all antitrust claims). A court's task in interpreting the scope of an assignment is to "enforce the intent of the parties." *Id.* Courts must look to the language of an ERISA assignment itself to determine the scope of the assigned claims. *See Eden Surgical Ctr.,* 420 Fed. Appx. at 697. Metcalf alleges that his patients assigned everything to him: benefits, claims, and rights. Complaint, ¶ 2.24–.2.25. As noted by the Ninth Circuit, such assignments by beneficiaries to their medical care providers may protect the beneficiaries and further ERISA's underlying policies:

> Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect. Such assignments also protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan. Moreover, assignments permit a trust fund to obtain improved benefits for beneficiaries by bargaining with health care providers for better coverage and lower rates.

*Misic,* 789 F.2d at 1377.

Accepting defendants' argument that the alleged Assignments are invalid because Metcalf, as the assignee, does not have an exclusive right to sue would in essence negate *every* assignment of health care benefits from participants to providers, contrary to ERISA policy. For the reasons stated in *Metcalf I,* the state law governing assignments permits Metcalf, as the assignee, the necessary standing to pursue claims to recover unpaid (denied) benefits and for benefits paid to the assignors (and not paid by the assignors to Metcalf) which failed to discharge the Plan's obligation after the Plan was allegedly notified of the Assignments. By ignoring the Assignments on the mistaken belief that the Plan contained an anti-assignment provision, defendants did not simply exercise their discretion, but allegedly violated state law and paid benefits to the wrong persons, leaving benefits unpaid to the person entitled to them in violation of the terms of the Plan. Contrary to defendants' position, enforcing the Assignments does not create a remedy under ERISA that does not exist.

Therefore, defendants' motion to dismiss Claims 1 and 2 should be denied.

## II. *Lack of Contract (Claim 3)*

Claim 3 alleges that if Metcalf cannot pursue claims for benefits as an assignee of his patients, then BCBSM has

breached its implied contract to pay him as a per-claim participating provider. Defendants seek dismissal of Claim 3 because there is no contract or agreement between Metcalf and the Plan.

The Handbook describes three classifications of health providers: network providers, out-of-network but participating providers, and non-participating providers. Handbook, p. 19. A network provider has a contract with the Plan, and a participating provider has a signed agreement with the Plan. *Id*, pp. 19, 91. Non-participating providers have no signed agreements with BCBS and "may or may not choose to accept the BCBS approved amount as payment in full" for health care services. *Id*, p. 20; Complaint, ¶ 2.5. Metcalf was a network provider until May 1, 2008. *Id*, ¶ 2.22. After that and during the time period at issue here, he was a non-participating provider. *Id*.

The section of the Handbook describing non-participating providers includes a description of per-claim participation as a provider who "will accept the amount we approve a payment in full for the services you need." Handbook, p. 20; Complaint, ¶ 2.7. It provides no required method for non-participating providers to notify BCBSM when they choose to participate on a per-claim basis. *Id*, ¶ 2.8. It states only: "If your present providers do not participate with BCBS, ask if they will accept the amount we approve as payment in full for the services you need. This is called participating on a 'per[-]claim' basis and means that the providers will accept the approved amount as payment in full for the specific services." Handbook, p. 20; Complaint, ¶ 2.6.

Metcalf alleges that he agreed to accept the approved amount as payment in full when he checked "YES" to the question "ACCEPT ASSIGNMENT?" for Box 27 on the Claim Forms he sent to BCBSM.

*Id*, ¶ 2.31. Thus, he became per-claim participating provider, notified defendants of that fact, and became entitled to all contractual rights owed to participating providers, including receipt of vouchers and direct payment of claims. *Id*, ¶¶ 2.32–2.33. By failing to provide him with those rights, he alleges that defendants committed a breach of contract. *Id*, ¶¶ 3.25–3.26.

The problem with this claim is that Metcalf's agreement to participate on a per-claim basis was with his patients, not with defendants. Reading the Plan as a whole, per-claim participation means only that a non-participating provider may agree with his patient to accept the amount approved by the Plan. There is no basis to support a claim that per-claim participation creates a contract between a non-participating provider, such as Metcalf, and the Plan and imposes obligations on the Plan in favor of the non-participating provider. In other words, Metcalf had no separate contract with any of the defendants that he can enforce. The plain meaning of the terms in the Plan precludes Metcalf's claim that he was a party to a contract with the Plan after he terminated his contract on May 1, 2008. Instead, any claim based on defendants' failure to pay Metcalf on a per-claim basis must be pursued by him under ERISA as an assignee of the Plan participants.

Accordingly, Claim 3 should be dismissed as an alternative claim with leave to replead as a separate ERISA violation.

### III. *Repleading*

 Lastly, defendants argue that the Complaint should be dismissed for failure to state a claim under FRCP 12(b)(6) by not providing enough detail about the hundreds of alleged claims so that they can determine whether and how they failed to comply with any provision of the Plan. Instead of identifying every claim, Metcalf

alleges that he treated 260 patients at various times over more than eight years with unspecified conditions and that some unspecified number of claims in unspecified amounts were not paid. Defendants urge this court to take the same approach with respect to multiple claims by an assignee as was taken in *Kindred Hosp. E. LLC v. Blue Cross & Blue Shield,* Case No. 3:05–cv–995–J–32TEM, 2007 WL 601749, at *4–5 (M.D.Fla. Feb. 16, 2007). If Metcalf does not know what his claims are, defendants believe that it is improper for this court to provide a forum to reconcile the bookkeeping for his chiropractic clinic.

They made this same argument in *Metcalf I* which this court rejected. This is quite a different situation than presented in *Kindred Hosp. E. LLC* which involved claims by participants in various employer insurance plans. Metcalf's claims all arise out of a single Plan and have been preceded by administrative claims pursuant to the terms of that Plan which defendants have denied. He does not challenge the amounts paid on isolated claims, but challenges every claim processed by defendants for the enumerated patients and date ranges based on one issue, namely defendants' decision to ignore the Assignments and pay the participants, rather than Metcalf, their assignee. Metcalf identifies each Plan participant by name in the Appendices and lists the range of dates for services provided. In addition, Metcalf presented the claims for payment to defendants.

The claims at issue are not new to defendants. Defendants are the custodians of the administrative records of the Plan participants and have more detailed information than Metcalf concerning both the paid and unpaid claims. Since they have processed and either paid or denied the claims, they are on notice of the specific factual basis for each claim and why benefits were not paid.

Therefore, as in *Metcalf I,* no supplemental allegations are necessary to comply with the minimal requirements of FRCP 8 or 10.

### RECOMMENDATION

Accept the allegations of material fact as true and construing those allegations in the light most favorable to the plaintiff, defendants' Motion to Dismiss for Failure to State a Claim (docket # 11) should be GRANTED as to Claim 3 with leave to replead as a separate ERISA violation and otherwise DENIED.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, September 15, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.